**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
Kristen E. Boysen (KB 0208)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ABRAHAM CAMPOS, EDER GORDILLO, PAULINO CARPINTERO, SAMUEL HERRERA and YONI DE LOS SANTOS, Individually and on Behalf of All Others Similarly Situated,**<br><br>            **Plaintiffs,**<br><br>-against-<br><br>**BKUK 3 CORPORATION d/b/a LA CARBONARA, BKUK 5 CORPORATION d/b/a LIMON JUNGLE, BKUK 6 CORPORATION d/b/a GALLO NERO, BKUK 7 CORPORATION d/b/a EL GALLO DE ORO, BKUK 8 CORPORATION d/b/a SERENATA, 9th AVE. LIME JUNGLE, INC. d/b/a LIMON JUNGLE, B & R SORRENTO CORP. d/b/a INTERMEZZO, PIO RESTAURANT, LLC d/b/a LUNA PIENA, ZUCCA TRATTORIA INC. d/b/a TAQUERIA MEZ-A AND GALLO NERO III and BESIM KUKAJ Jointly and Severally,**<br><br>            **Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

Plaintiffs Abraham Campos, Eder Gordillo, Paulino Carpintero, Samuel Herrera and Yoni De Los Santos (together, the "Plaintiffs"), individually and on behalf of all others similarly situated, as collective and class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are former servers, a bartender, a runner, a busser and a kitchen employee at Defendants' enterprise of Italian and Mexican restaurants located throughout Manhattan, New York. For their work, despite the fact that they typically worked in excess of forty (40) hours each week, Plaintiffs were paid either a flat weekly salary that did not vary with the number of hours that they worked or were paid the "tipped" minimum wage rate for a maximum of twenty-seven (27) to thirty-five (35) hours in a week.

2.      Defendants' payment schemes resulted in systemic underpayment of wages to Plaintiffs and Defendants' other restaurant employees in violation of federal and state wage laws.

3.      Plaintiffs bring this action to recover unpaid minimum wages and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiffs also bring claims for unpaid spread-of-hours premiums, unlawfully withheld gratuities, unreimbursed business expenses and for failure to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

4.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees who worked for Defendants at any time during the three (3) years prior to the commencement of this action.

2

5.      Plaintiffs bring their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all servers, bartenders, runners, bussers, kitchen employees and all other non-exempt restaurant restaurant employees who worked for Defendants in New York at any time during the six (6) years prior to the commencement of this action.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district and Defendants' businesses are located in this district.

8.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

9.      Plaintiff Abraham Campos ("Campos") was, at all relevant times, an adult individual residing in Queens County, New York.

10.      Plaintiff Eder Gordillo ("Gordillo") was, at all relevant times, an adult individual residing in Queens County, New York.

11.      Plaintiff Paulino Carpinerto ("Carpintero") was, at all relevant times, an adult individual residing in Queens County, New York.

12.    Samuel Herrera ("Herrera") was, at all relevant times, an adult individual residing in Queens County, New York.

13.    Plaintiff Yoni De Los Santos ("De Los Santos") was, at all relevant times, an adult individual residing in Queens County, New York.

14.    During the relevant time period, Plaintiffs performed work for Defendants at their Italian and Mexican restaurants located throughout Manhattan, New York, including:

- "Gallo Nero," located at 402 West 44th Street, New York, NY 10036 (hereinafter "Gallo Nero 44th Street");

- "El Gallo De Oro," located at 1 Seventh Avenue South, New York, NY 10011;

- "La Carbonara," located at 202 West 14th Street, New York, NY 10011;

- "Serenata," located at 111 West 17th Street, New York, NY 10011;

- "Limon Jungle," located at 803 Ninth Avenue, New York, NY 10019 (hereinafter "Limon Jungle 9th Avenue");

- "Limon Jungle," located at 197 Seventh Avenue, New York, NY 10012 ("Limon Jungle Chelsea");

- "Luna Piena," located at 243 East 53rd Street, New York, NY 10022;

- "Intermezzo," located at 202 Eighth Avenue, New York, NY 10011; and

- "Taqueria MEZ-A," located at 95 Seventh Avenue South, New York, NY 10014.

15.    Defendants also owned and operated "Gallo Nero III," located at 1 Seventh Avenue South, New York, NY 10011. Upon information and belief, Gallo Nero III closed in or around early 2017 and was replaced by El Gallo De Oro, which is also owned, operated and managed by Defendant Kukaj as part of the BKUK Group enterprise.

16.    Upon information and belief, Defendant Kukaj also owns, operates and manages two (2) restaurants doing business as "Cara Mia," located at 654 9th Avenue, New York, NY 10036

4

("Cara Mia 1") and 623 Ninth Avenue, New York, NY 10036 ("Cara Mia 2") and "Maria Pia," located at 319 West 51st Street, New York, NY 10019.

17.     Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

18.     BKUK 3 CORPORATION is an active New York Corporation doing business as "La Carbonara" with its principal place of business at 202 West 14th Street, New York, NY 10013.

19.     BKUK 4 CORPORATION is an active New York Corporation doing business as "Gallo Nero," with its principal place of business at 402 West 44th Street, New York, NY 10036.

20.     BKUK 5 CORPORATION is an active New York Corporation doing business as "Limon Jungle," with its principal place of business at 197 7th Avenue, New York, NY 10012.

21.     BKUK 7 CORPORATION is an active New York Corporation doing business as "El Gallo De Oro," with its principal place of business at 1 Seventh Avenue South, New York, NY 10011.

22.     BKUK 8 CORPORATION is an active New York Corporation doing business as "Serenata," with its principal place of business at 111 West 17th Street, New York, NY 10011.

23.     9th AVE. LIME JUNGLE, INC. is an active New York Corporation doing business as "Limon Jungle," with its principal place of business at 803 Ninth Avenue, New York, NY 10012.

24.     B & R SORRENTO CORP. is an active New York Corporation doing business as "Intermezzo," with its principal place of business at 202 Eighth Avenue, New York, NY 10011.

25.     PIO RESTAURANT, LLC is an active New York limited liability company doing business as "Luna Piena," with its principal place of business at 243 East 53rd Street, New York, NY 10022.

26.     ZUCCA TRATTORIA INC. is an active New York Corporation doing business as "Taqueria MEZ-A," with its principal place of business located at 95 Seventh Avenue South, New York, NY 10014. Upon information and belief, Zucca Trattoria Inc. previously did business as "Gallo Nero III" until in or around 2016.

27.     BKUK 3 Corporation, BKUK 4 Corporation, BKUK 5 Corporation, BKUK 7 Corporation, BKUK 8 Corporation, 9th Ave. Lime Jungle Inc., B & R Sorrento Corp., Pio Restaurant, LLC and Zucca Trattoria, Inc. are hereinafter referred to collectively as the "BKUK Group Enterprise" or the "Corporate Defendants."

28.     At all relevant times, the Corporate Defendants operated together as a single business enterprise, with the same employment policies, including wage-and-hour policies.

29.     Upon information and belief, Defendant Besim Kukaj ("Kukaj" or the "Individual Defendant") is an owner and operator of the Corporate Defendants who sets the Corporate Defendants' payroll policies, including the unlawful practices complained of herein.

30.     Upon information and belief, Defendant Kukaj owns, operates and manages more than ten (10) restaurants throughout Manhattan under the name "BKUK Group," including Luna Piena, Gallo Nero, El Gallo De Oro, La Carbonara, Maria Pia, Serenata, Limon Jungle Chelsea and 9th Avenue, Intermezzo, Taqueria MEZ-A and Cara Mia 1 and 2.

31.     The Corporate Defendants' operations are interrelated and unified and are a single enterprise and/or joint employer of Plaintiffs. Defendants' website (http://www.bkukgroup.com) links to the websites of Limon Jungle, La Carbonara, Luna Piena, Intermezzo, Maria Pia, Cara

Mia, Gallo Nero, Serenata, El Gallo De Oro and Taqueria MEZ-A. Each restaurant's individual website features the BKUK Group logo, Defendant Kukaj's photograph, and contact information for, and links to the websites of, Kukaj's other "sister restaurants."

32.    At all relevant times, the Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

33.    The Individual Defendant participated in the day-to-day operations of the Corporate Defendants and acted intentionally in his direction and control of Plaintiffs and the Corporate Defendants' other similarly situated employees, and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendants.

34.    At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

35.    At all relevant times, Plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

36.    Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00

37.    At all relevant times, the Corporate Defendants have used goods and materials produced in interstate commerce, and have employed two or more individuals who handled these goods and materials.

38.    Upon information and belief, Defendants' employees "Sam," Benny Kelloni and

"Joe" are current and former managers of Defendants' restaurants. Upon information and belief, Defendant Kukaj was in constant contact with "Sam," Kelloni, "Joe" and other managers throughout the relevant time period to ensure that the restaurants were operating in accordance with Defendants' standards and policies.

39.     Upon information and belief, Bajovic Violeta and Alban Laci are business partners of Defendant Kukaj who jointly own certain of Kukaj's restaurants, including Luna Piena, El Gallo de Oro and La Carbonara.

## FLSA COLLECTIVE ACTION ALLEGATION

40.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since May 4, 2015 and through the entry of judgment in this case (the "Collective Action Period") who worked as servers, bartenders, bussers, runners, kitchen employees and other non-exempt restaurant employees (the "Collective Action Members").

41.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policy of failing to pay minimum wages for all hours worked and overtime premiums for work performed in excess of forty (40) hours each week.  As a result of this policy, Plaintiffs and the Collective Action Members did not receive the legally-required minimum wages for all hours worked or overtime premium payments for all hours worked in excess of forty (40) hours per week.

42.     Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

8

## RULE 23 CLASS ACTION ALLEGATIONS

43.     Pursuant to the NYLL, Plaintiffs bring their Second through Ninth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants in New York at any time since May 4, 2012 and through the entry of judgment in this case (the "Class Period") who worked as servers, bartenders, bussers, runners, kitchen employees and other non-exempt restaurant employees (the "Class Members").

44.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

45.     The Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are at least forty (40) Class Members.

46.     The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class. These common questions include, but are not limited to:

a.   whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.   whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.   whether the Corporate Defendants in this Action operate together as a single integrated enterprise;

d.   whether Defendants failed and/or refused to pay Plaintiffs and the Class

Members wages for all hours worked;

e.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members minimum wages for all hours worked;

f.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

g.  whether Defendants failed to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts in excess of ten (10) hours or split shifts;

h.  whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

i.  whether Defendants failed to provide proper wage notices to Plaintiffs and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

j.  whether Defendants properly notified Plaintiffs and the Class Members that they were taking the tip credit;

k.  whether Defendants illegally retained gratuities left by customers and failed to pay all such gratuities to Plaintiffs and the Class Members;

l.  whether Defendants failed to reimburse Plaintiffs for the cost of bounced checks;

m.  whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

n.  whether Defendants are liable for all damages claimed hereunder, including but

10

not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

47.    <u>Plaintiffs' claims are typical of the Class Members' claims</u>. Plaintiffs, like all Class Members, are resturant employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, paid less than the statutory minimum wage for all hours worked, not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, were not paid spread-of-hours premiums when working a shift of ten (10) or more hours and/or a split shift, were not paid all gratuities to which they were entitled, were not reimbursed for the cost of bounced checks, and did not receive proper wage statements and wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

48.    <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

49.    Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

50.    <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

51.    Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

52.    The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are aware of other actions concerning the pay practices of certain of the

Defendants, including *Leon, et al. v. Besim Kukaj d/b/a BKUK Group*, *et al.*, Civil Action No. 17-cv-6167; *Lliguichuzhca, et al. v. 319 West 51st St. Restaurant Inc. d/b/a Maria Pia, et al.*, Civil Action No. 17-cv-0166; *Sontay, et al. v. 9th Ave. Lime Jungle, Inc. d/b/a Limon Jungle, et al.*, Civil Action No. 16-cv-7076; *Barrios, et al. v. Zucca Trattoria Inc., et al*., Civil Action No. 18-cv-1466; and *Garcia v. BKUK 3 Corp. d/b/a La Carbonara, et al.,* Civil Action No. 17-cv-4385, which settled in March 2018; and there are no likely difficulties that will arise in managing the class action.

## <u>STATEMENT OF FACTS</u>

### <u>Defendants' Restaurants</u>

53.    At all relevant times, Defendants have been in the food service business.

54.    Upon information and belief, throughout the relevant time periods, the Individual Defendant has owned, operated, and managed the restaurants set forth in paragraphs 14-16.

55.    Upon information and belief, Defendant Kukaj additionally owns and operates BKUK Hospitality Group, which leases a restaurant and lounge space on the fifth floor of a hotel located at 1717 Broadway, New York, NY 10019.

56.    Defendants' business are operated and marketed by Defendants as a common enterprise. Each of the above businesses are advertised jointly on Defendants' website (http://www.bkukgroup.com).

57.    Employees were freely interchangeable, the various business operations were marketed as BKUK Group restaurants, and all employees were paid by the same or substantially similar payroll methods.

58.    Upon information and belief, Defendants operate all of their restaurants through common management, ownership and financial control.

59.      The Individual Defendant is a frequent presence at Defendants' restaurants and takes an active role in ensuring that Defendants' restaurants are run in accordance with Defendants' procedures and policies.

**Plaintiffs' Work for Defendants**

60.      Plaintiff Abraham Campos worked for Defendants as a server at Taqueria MEZ-A from approximately 2010 to 2013, La Carbonara from approximately 2013 through May 2017 and Luna Piena from approximately May 2017 through November 2017 (the "Campos Employment Period").

61.      From approximately 2010 through 2013, when Plaintiff Campos worked at Taqueria MEZ-A, he typically worked six (6) days per week, with Wednesdays off, from approximately 11:00 am to 11:00 pm on Mondays, Tuesdays, Thursdays and Sundays and from 11:00 am to 12:00 am on Fridays and Saturdays, for a total of approximately seventy-four (74) hours per week.

62.      From approximately 2013 through May 2017, when Plaintiff Campos worked at La Carbonara, he typically worked five (5) days per week, with Wednesdays and Thursdays off, from 11:00 am to 11:00 pm on Mondays and Tuesdays, from 11:00 am to 12:00 am on Fridays and Saturdays and from 11:00 am to 5:00 pm on Sundays, for a total of approximately fifty-six (56) hours per week.

63.      From approximately May 2017 through November 2017, when Plaintiff Campos worked at Luna Piena, he typically worked five (5) days per week, from 11:00 am to 11:00 pm on Mondays, Tuesdays, Thursdays and Sundays, and from 11:00 am to 4:00 pm on Fridays, for a total of approximately fifty-three (53) hours per week.

64.      For his work at Taqueria MEZ-A, Plaintiff Campos received a flat weekly rate of

13

one hundred and fifty dollars ($150.00), plus tips. During the time that he worked at Taqueria MEZ-A, Plaintiff received his wages entirely in cash with no paystub or breakdown of the hours that he worked or his regular or overtime rates.

65. For his work at La Carbonara, Plaintiff Campos typically received a payroll check showing payment for a maximum of twenty-seven (27) hours per week. Despite the fact that Plaintiff Campos generally worked approximately six to thirteen (6-13) hours per day five (5) days per week during the period that he worked at La Carbonara, he was frequently instructed by a manager, "Sam," not to record any time worked in excess of twenty-seven (27) hours in a week. Thus, Plaintiff Campos typically did not receive wages of any kind for hours worked in excess of twenty-seven (27) in a week during this period.

66. For a period of approximately one (1) year starting in or around June 2016, Plaintiff received paystubs showing payment for a maximum of forty (40) hours, despite the fact that he typically worked well in excess of fory (40) hours in a week.

67. On two (2) or three (3) occasions, when Plaintiff Campos punched in more than twenty-seven (27) hours on Defendants' time clock, he received a note attached to his payment from Defendants' accountant reminding him that he was not permitted to record any time worked in excess of twenty-seven (27) hours in a week.

68. For his work at Luna Piena, Plaintiff Campos received a flat weekly rate of two hundred dollars ($200.00), plus tips. During the time that he worked at Luna Piena, Plaintiff received his wages entirely in cash with no paystub or breakdown of the hours that he had worked or his regular or overtime rates.

69. Despite the fact that Plaintiff Campos typically worked twelve (12) hours per day on Mondays, Tuesdays, Thursdays and Sundays and five (5) hours per day on Fridays, for a total

of approximately fifty-three (53) hours per week at Luna Piena and was paid entirely in cash, Defendant Kukaj and various managers personally instructed him not to record hours worked in excess of twenty-seven (27) hours in a week on Defendants' time clock.

70.    Plaintiff Campos alleges that he observed Defendant Kukaj and certain managers take money from a tip jar near the cash register at Luna Piena in which servers deposited cash tips left by customers on a near daily basis to purchase various items for the restaurant.

71.    Plaintiff alleges that he was frequently unable to take a break of any kind when he worked at Taqueria MEZ-A. If he was able to take a break at La Carbonara or Luna Piena, it would last for a maximum of fifteen to twenty (15-20) minutes.

72.    Plaintiff Campos alleges that he observed Defendant Kukaj's brother, "Luan," at Luna Piena at least once per week taking time cards from employees to provide to Defendants' accountant and helping to manage employees.

73.    <u>Plaintiff Eder Gordillo</u> worked for Defendants as a server at Luna Piena and La Carbonara from approximately January 2017 through June 2017, alternating days of the week at both restaurants. From in or around June 2017 through in or around February 2018, Plaintiff Gordillo worked as a server only at Luna Piena (collectively, the "Gordillo Employment Period").

74.    For approximately the first five (5) months of his employment, until approximately June 2017, when Plaintiff Gordillo was working at both Luna Piena and La Cabonara, he typically worked five (5) days per week from 11:00 am to 11:00 pm on most weekdays and from 11:00 am to 12:00 am on Fridays and Saturdays, for a total of approximately sixty-two (62) hours per week.

75.    After approximately his first five (5) months of employment with Defendants,when Plaintiff Gordillo worked only at Luna Piena, he typically worked six (6) days per week, with Mondays off, from approximately 11:00 am to 11:00 pm and from 11:00 am to 12:00 on Saturdays,

for a total of approximately seventy-three (73) hours per week. Starting in or around December 2017 through the end of the Gordillo Employment Period, Plaintiff Gordillo typically worked five (5) double shifts, from approximately 11:00 am to 11:00 pm, and from 11:00 am to 12:00 am on Saturdays, and one (1) single shift from either 4:00 pm to 11:00 pm or 11:00 am to 4:00 pm per week, for a total of approximately sixty-eight (68) hours per week. For a period of approximately several weeks in or around April 2017, Plaintiff Gordillo was frequently required to close the restaurant. When he was required to close the restaurant, he would typically end his shift at around 12:00 am.

76.     Plaintiff alleges that Defendant Kukaj and various managers personally instructed him not to record more than twenty-seven (27) hours per week on Defendants' time clock, despite the fact that he frequently worked seven to thirteen (7-13) hour days five to six (5-6) days per week throughout his employment with Defendants.

77.     Throughout the Gordillo Employment Period, Plaintiff Gordillo was generally unable to take a break of any kind.

78.     From the beginning of the Gordillo Employment Period to in or around April 2017, Plaintiff Gordillo received a flat weekly salary of one hundred dollars ($100.00) per week. Starting in or around April 2017, his salary increased to two hundred dollars ($200.00) per week. Throughout the Gordillo Employment Period, Plaintiff Gordillo typically received his wages either entirely in cash or on a corporate check. On at least one (1) occasion, Plaintiff Gordillo received a personal check from Defendant Kukaj.

79.     Although Plaintiff Gordillo typically received a sheet of paper with his payment indicating the amount that he was receiving in tips, he never received a proper and accurate wage statement containing a breakdown of the hours that he had worked or his regular or overtime rates.

80.    Plaintiff Gordillo alleges that Defendants had a policy of not paying wages of any kind to new employees during their training periods. As a result of this policy, Plaintiff Gordillo was not paid wages of any kind for approximately five (5) weeks of work.

81.    <u>Plaintiff Paulino Carpintero</u> worked for Defendants as a salad maker, dishwasher, cleaner, food prep employee, grill man and pastry employee at La Carbonara from approximately June 2014 through in or around February 2018 (the "Carpintero Employment Period").

82.    Throughout the Carpintero Employment Period, Plaintiff Carpintero typically worked six (6) days per week, with Mondays off, from 3:00 pm to 11:00 pm on Tuesdays, Wednesdays, Thursdays and Sundays and from 3:00 pm to 12:00 am on Fridays and Saturdays, for a total of approximately fifty (50) hours per week.

83.    For his work, Plaintiff Carpinerto was paid a flat weekly salary of five hundred dollars ($500.00) for approximately the first eight (8) months of his employment. After approximately eight (8) months, he received a flat salary of five hundred and fifty dollars ($550.00) per week, which increased to six hundred dollars ($600.00) per week in approximately mid-2015 after he began taking on certain additional job duties, including working the pastry station, preparing food and cleaning the kitchen and refrigerators. Starting in or around 2016, after he once again took on certain additional job duties, including working the grill and making salads, he began receiving a flat weekly salary of six hundred and fifty dollars ($650.00). Plaintiff typically received his wages entirely in cash or corporate check with no paystub or breakdown of the hours that he had worked or his regular or overtime rates.

84.    Throughout his employment with Defendants, Plaintiff Carpintero was generally unable to take a break of more than ten to fifteen (10-15) minutes.

85.    Plaintiff Carpintero alleges that Defendants had a policy of not paying wages of

any kind to new employees during their training periods. As a result of this policy, Plaintiff was not paid wages of any kind for approximately three (3) weeks of work.

86.    <u>Plaintiff Samuel Herrera</u> worked for Defendants as a sever at Intermerzzo from in or around 2014 through in or around October 2017 and at Luna Piena from in or around October 2017 through in or around February 2018. (the "Herrera Employment Period").

87.    During the time that Plaintiff Herrera worked at Interrmezzo, he typically worked five (5) days per week, with Wednesdays and Thursdays off, from 11:00 am to 11:00 pm, for a total of approximately fifty-five to sixty (55-60) hours per week. Occasionally, he was required to work until 12:00 am on Fridays and Saturdays when the restaurant was busy. On four (4) or five (5) occasions, Plaintiff Herrera was required to work a sixth day during the week.

88.    From the start of the Herrera Employment Period to in or around 2016, Plaintiff Herrera was paid seven dollars ($7.00) per hour, plus tips, entirely via corporate check. Although he typically received a paystub with his payment in addition to the corporate check, Defendant Kukaj instructed him not to record time worked in excess of twenty-six (26) to thirty-five (35) hours in a week, depending on the number of days that he worked. Thus, although Plaintiff Herrera was typically working fifty-five to sixty (55-60) hours per week, and sometimes more, he was not paid wages of any kind for hours worked in excess of twenty-six to thirty-five (26-35) hours.

89.    From in or around 2016 through the end of the Herrera Employment Period, Plaintiff Herrera was paid his wages entirely via corporate check. On at least one (1) occasion, Plaintiff Herrera received a personal check from Defendant Kukaj.

90.    Throughout his employment with Defendants, Plaintiff Herrera was generally unable to take a break of more than ten to fifteen (10-15) minutes.

91.    <u>Plaintiff De Los Santos</u> worked for Defendants as a server at Gallo Nero III for

approximately five (5) or six (6) months starting in or around 2015, a food runner at Gallo Nero 44th Street for approximately four (4) months after his employment at Gallo Nero III, a server at Serenata for approximately the three (3) months after his employment at Gallo Nero 44th Street, a busser and runner at Limon Jungle Chelsea for approximately one and one-half (1.5) months after his employment at Serenata, a busser at Limon Jungle 9th Avenue for approximately six (6) months after his employment at Limon Jungle Chelsea, a server at Luna Piena for approximately four to five (4-5) months after his employment at Limon Jungle 9th Avenue, a server at El Gallo de Oro for approximately three to four (3-4) months after his employment at Luna Piena and a server at Carbonara following his employment at El Gallo De Oro until approximately February 2018 (the "De Los Santos Employment Period"). Although he primarily worked as a server at Defendants' restaurants, he occasionally performed deliveries and cleaned around the restaurants.

92.    During the period that Plaintiff De Los Santos worked at Gallo Nero III, he typically worked five (5) days per week, from 11:00 am to 11:00 pm or 12:00 am for a total of approximately sixty to sixty-five (60-65) hours per week.

93.    When De Los Santos worked at Gallo Nero 44th Street, he typically worked five (5) days per week, with Mondays and Tuesdays off, from 11:00 am to 11:00 pm on Wednesdays and Sundays, from 11:00 am to 1:00 pm on Thursdays and from 11:00 am to 3:00 am on Fridays and Saturdays, for a total of approximately seventy (70) hours per week.

94.    During the period that De Los Santos worked at Serenata, he typically worked five (5) days per week, with Mondays and Tuesdays off, from 11:00 am to 11:00 pm on Wednesdays, Thursdays and Sundays and from 11:00 am to 12:00 am on Fridays and Saturdays, for a total of approximately sixty-two (62) hours per week.

95.    During the period that De Los Santos worked at Limon Jungle Chelsea, he typically

worked five (5) days per week, from 11:00 am to 11:00 pm on Wednesdays and Sundays, from 4:00 pm to 11:00 pm on Thursdays and from 11:00 am to 12:00 am on Fridays and Saturdays, for a total of fifty to fifty-six (50-56) hours per week.

96.     During the period that De Los Santos worked at Limon Jungle 9th Avenue, he typically worked five (5) days per week, with Mondays and Tuesdays off, from 11:00 am to 11:00 pm on Wednesdays, Thursdays and Sundays, from 5:00 pm to 12:00 am on Fridays and from 11:00 am to 12:00 am on Saturdays, for a total of approximately fifty-four (54) hours per week.

97.     During the period that De Los Santos worked at Luna Piena, he typically worked four (4) days per week, from either 11:00 am to 4:00 pm or 11:00 pm on Wednesdays and Thursdays, from 4:00 pm to 12:00 am on Fridays and from 11:00 am to 11:00 pm on Saturdays, for a total of between twenty-five (25) and thirty-two (32) hours per week. During weeks when the restaurant hosted large parties, De Los Santos typically worked up to forty-five (45) hours per week.

98.     During the period that De Los Santos worked at El Gallo de Oro, he typically worked five (5) days per week, with Mondays and Tuesdays off, from 11:00 am to 11:00 pm on Wednesdays, Thursdays and Sundays, and from 11:00 am to 12:00 am on Fridays and Saturdays, for a total of approximately sixty-two (62) hours per week.

99.     During the period that De Los Santos worked at La Carbonara, he typically worked five (5) days per week, with Mondays and Tuesdays off, from 11:00 am to 11:00 pm on Wednesdays and Thursdays, from 11:00 am to 12:00 am on Fridays and Saturdays and from 11:00 am to 4:00 pm on Sundays, for a total of approximately fifty-five (55) hours per week.

100.     For his work at Gallo Nero III, Plaintiff De Los Santos was paid a flat weekly rate of two hundred dollars ($200.00) entirely via corporate check, plus tips, with no paystub or

breakdown of the hours that he had worked or his regular or overtime rates.

101.    For his work at Gallo Nero 44th Street, Plaintiff De Los Santos was paid a flat weekly rate of one hundred dollars ($100.00) entirely via corporate check, plus tips, with no paystub or breakdown of the hours that he had worked or his regular or overtime rates.

102.    For his work at Serenata, Plaintiff De Los Santos was paid paid a flat weekly rate of two hundred dollars ($200.00) entirely via corporate check, plus tips, with no paystub or breakdown of the hours that he had worked or his regular or overtime rates.

103.    For his work at Limon Jungle Chelsea, Plaintiff De Los Santos was paid paid a flat weekly rate of two hundred dollars ($200.00) entirely via corporate check, plus tips, with no paystub or breakdown of the hours that he had worked or his regular or overtime rates.

104.    For his work at Limon Jungle 9th Avenue, Plaintiff De Los Santos was paid paid a flat weekly rate of two hundred dollars ($200.00), plus tips, via corporate check. Although he typically received a paystub with his payment, the paystub only reflected payment for a maximum of twenty-seven (27) hours of work.  During the period that he worked at Limon Jungle 9th Avenue, Plaintiff De Los Santos was personally instructed by Defendant Kukaj to record no more than twenty-seven (27) hours on the restaurant's time clock.

105.    For his work at Luna Piena, Plaintiff De Los Santos was paid a flat weekly salary of two hundred dollars ($200.00), plus tips, entirely via corporate check, plus tips, with no paystub or breakdown of the hours that he had worked or his regular or overtime rates.

106.    For his work at El Gallo de Oro, Plaintiff De Los Santos was paid a flat weekly salary of two hundred dollars ($200.00), plus tips, entirely via corporate check, plus tips, with no paystub or breakdown of the hours that he had worked or his regular or overtime rates.

107.    For his work at La Carbonara, Plaintiff De Los Santos was paid a flat weekly salary

of one hundred dollars ($100.00), plus tips, entirely via corporate check, plus tips. Although he received a slip of paper showing his total weekly salary for each particular pay period, the document that he received did not contain a breakdown of the hours that he had worked or his regular or overtime rates.

108.    Although Plaintiff De Los Santos received a flat weekly rate for his work at La Carbonara, Defendants frequently clocked him in and out for no more than twenty-seven (27) hours per week using a punch-in machine at the restaurant. On several occasions when De Los Santos attempted to clock in or out, he was unable to do so, as either one of the managers or Defendant Kukaj had already clocked him in or out. Despite the fact that the clock-in and clock-out times entered into the timeclock were inaccurate, De Los Santos was required to sign time cards reflecting an inaccurate number of hours worked in order to receive his payment.

109.    During De Los Santos's employment at La Carbonara, Defendant Kukaj typically distributed tips to employees. During the period that De Los Santos worked at La Carbonara, Defendant Kukaj did not inform employees how much they were supposed to receive or explain the method he was using to distribute the tips. Upon information and belief, Plaintiff De Los Santos did not receive the total amount of gratuities to which he was entitled.

110.    Throughout the De Los Santos Employment Period, Plaintiff De Los Santos was frequently unable to take a break of more than ten to twenty (10-20) minutes.

111.    Plaintiff De Los Santos alleges that Defendants had a policy of not paying wages of any kind to new employees during their training periods. As a result of this policy, Plaintiff De Los Santos was not paid wages of any kind for approximately two (2) weeks of work.

112.    Plaintiffs allege that on several occasions when trying to collect their payments, the checks that Defendants provided would bounce, and Plaintiffs would be charged a fee per bounced

check by their respective banks. Defendants did not reimburse Plaintiffs for these bounced check fees.

113.    Defendants are well aware of their legal obligations under the FLSA and NYLL and knowingly and intentionally the law by failing to pay Plaintiffs and the Collective and Class Action Members minimum wages for all hours worked, overtime premiums and spread-of-hours premiums and failing to provide proper wage notices and wages statements as required by the NYLL. Specifically, Defendant Kukaj and numerous restaurants owned, operated and managed by Defendant Kukaj, including Limon Jungle 9th Avenue, Maria Pia, Cara Mia 2, Taqueria MEZ-A, Gallo Nero 44th Street, Luna Piena, El Gallo De Oro, La Carbonara, Serenara and Intermezzo, have been sued for various wage-and-hour violations over the past several years. (*See Sontay v. 9th Avenue Lime Jungle, Inc. d/b/a Limon Jungle, Besim Kukaj and John Doe*, Civil Action No. 16-cv-7076; *Lliguichuzhca v. 319 West 51st St. Restaurant, Inc. d/b/a Maria Pia, BKUK1 Corporation d/b/a Maria Pia, Besim Kukaj and Marcello Coello*, Civil Action No. 17-cv-166; *Leon, et al. v. Besim Kukaj d/b/a BKUK Group, BKUK 10 Corp. d/b/a Cara Mia 2, Zucca Trattoria Inc. d/b/a Taqueria Mez-A and Gallo Nero, Pio Restaurant LLC d/b/a Luna Piena and BKUK 7 Corp. d/b/a El Gallo de Oro*, Civil Action No. 17-cv-6167; *Garcia v. BKUK 3 Corp. d/b/a La Carbonara Restaurant, BKUK 8 Corp. d/b/a Serenata, BKUK 9 Corp. d/b/a Limon Jungle, B&R Sorrento Corp. d/b/a Intermezzo, Besim Kukaj and John Doe*, Civil Action No. 17-cv-4385; *Leka v. BKUK 3 Corporation d/b/a La Carbonara, BKUK 4 Corporation d/b/a Gallo Nero and Besim Kukaj*, Civil Action No. 15-cv-0632; *Candia-Estrada, et al. v. BKUK 3 Corporation d/b/a La Carbonara and Besim Kukaj*, Civil Action No. 14-cv-2055; *Adams v. BKUK 5 Corporation d/b/a Limon Jungle Empenada and 191 Seventh Avenue Corporation*, Civil Action No. 16-cv-3596; *Barrios v. Zucca Trattoria Inc. d/b/a Taqueria MEZ-A, BKUK Corp. d/b/a BKUK Group, Besim Kukaj, Gino*

*Giannuzzi and Albano Laci*, Civil Action No. 18-cv-1466; and *Sanchez Gomez v. BKUK Corporation, Besim Kukaj, Luan Kukaj and Adrian Lazo*, Civil Action No. 4652).

**Defendants' Unlawful Corporate Policies**

114.    Plaintiffs and the Collective and Class Action Members were paid by the same corporate policies of Defendants, including failing to pay minimum wages for all hours worked, overtime premiums and spread-of-hours premiums and failing to provide proper wage statements and wage notices.

115.    Defendants did not notify Plaintiffs or the Class Members whether they were relying upon the tip credit in calculating their hourly rate in accordance with the requirements of the NYLL.

116.    Because Defendants routinely violated the requirements for taking the tip credit (i.e., did not provide notice, and the owners pocketed some of the tips) Defendants were not entitled to pay Plaintiffs or Collective Action Members the New York "tipped" minimum wage and instead were obligated to pay Plaintiffs and the Collective Action Members the full statutory minimum wage.

117.    Defendants did not provide Plaintiffs or the Collective and Class Action Members with proper wage notices at the time of hire or by February 1 of each year.

118.    Defendants failed to provide accurate wage statements to Plaintiffs and the Collective and Class Action Members which reflected, among other information, all hours worked, including overtime hours, the regular and overtime pay rate(s) during the pay period.

119.    Despite the fact that Plaintiffs typically worked over forty (40) hours each week, Defendants did not pay them overtime premiums of one and one-half (1.5) their hourly rate.

120.    Despite the fact that Plaintiffs regularly worked in excess of ten (10) hours per day,

Defendants failed to pay Plaintiffs and the Collective and Class Action Members an extra hour of minimum wage for such days.

121.    Defendants unlawfully withheld a portion of the gratuities to which Plaintiffs and the Collective and Class Members were entitled during their employment with Defendants.

122.    On numerous occasions, Defendants paid Plaintiffs and the Collective and Class Action members in corporate or personal check without having sufficient funds in their bank account.  As a result, the checks would bounce, and Plaintiffs and the Collective and Class Members would incur a fee through their bank. Defendants failed to reimburse Plaintiffs and the Collective and Class Members for the bounced check fees.

123.    Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

124.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

125.    By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

126.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

127.    Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.

128.    By failing to notify Plaintiffs and the Collective Action Members that they were relying on the tip credit in calculating employees' hourly rates, Defendants lose the ability to utilize a tip credit against the FLSA's minimum wage. Therefore, Plaintiff and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

129.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

130.    By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

131.    Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Class Members)**

132.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

133.     Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

134.     Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Class Members)**

135.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

136.     Defendants willfully violated Plaintiffs and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) each week, in violation of the NYLL and regulations promulgated thereunder.

137.     Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for

unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### FIFTH CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS
### (Brought on Behalf of Plaintiffs and the Class Members)

138.   Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

139.   Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

140.   Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action

### SIXTH CAUSE OF ACTION
### NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE

**(Brought on Behalf of Plaintiffs and the Class Members)**

141.  Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

142.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiff and the Class Members as their primary language, containing Plaintiffs' and the Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

143.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SEVENTH CAUSE OF ACTION**

## NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS
### (Brought on Behalf of Plaintiffs and the Class Members)

144.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

145.    Defendants have willfully failed to supply Plaintiffs and the Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

146.    Due to Defendants' violations of the NYLL, Plaintiffs and Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

### EIGHTH CAUSE OF ACTION
### NEW YORK LABOR LAW – UNREIMBURSED BUSINESS EXPENSES
### (Brought on Behalf of Plaintiffs and the Class Members)

147.    Plaintiffs, on behalf of themselves and the Class Members, repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

148.    Defendants often paid Plaintiffs and Class Members in paycheck or business check

without having sufficient funds in their bank account.  As a result, the checks would bounce, and Plaintiffs and Class Members would incur a fee through their bank. Defendants failed to reimburse Plaintiffs for the bounced check fees. Accordingly, Defendants are required to compensate Plaintiffs for all business expenses that Defendants required Plaintiffs to incur without reimbursement.

149.    The Defendants' NYLL violations have caused Plaintiffs and the Class Members irreparable harm for which there is no adequate remedy at law.

150.    Due to Defendants' NYLL violations, Plaintiffs and the York Class Members are entitled to recover damages from Defendants in the amount of Defendants' unreimbursed business expenses for which Plaintiffs and the New York Class Members incurred, plus liquidated damages, damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL § 663(1) *et seq.* and § 196-d.

## NINTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNLAWFUL WITHHOLDING OF GRATUITIES
### (Brought on Behalf of Plaintiffs and the Class Members)

151.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

152.    Defendants have willfully failed to compensate Plaintiffs and the Class Members for all gratuities earned by withholding and retaining a portion of the tips left by the cusomters for the Plaintiffs and Class Members, in violation of § 196-d of the New York Labor Law. Accordingly, Defendants are required to compensate Plaintiffs and the Class Members for all gratuities withheld by Defendants.

153.    Due to the Defendants' New York Labor Law violations, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid gratuities, damages for unreasonably delayed payment of wages liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et al.*, 196-d.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.    An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.    An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.    An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.    An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten (10) hours;

i.    An award of compensatory and liquidated damages as a result of Defendants' willful failure to pay all gratuities earned by Plaintiffs and the Opt-In Plaintiffs;

j.    An award of fifty dollars ($50) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195(1) pertaining to distribution of wage notice, occurred or continue to occur, or a total of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1-b);

k.    An award of two hundred fifty dollars ($250) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195(3), pertaining to distribution of wage statements, occurred or continue to occur, or a total of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1-d);

l.    An award of damages arising out of the non-payment of gratuities;

m.    An award of liquidated damages arising out of the non-payment of gratuities;

n.    An award of damages arising out of unreimbursed business expenses;

o.      An award of liquidated damages arising out of unreimbursed business expenses;

p.      An award of prejudgment and post-judgment interest;

q.      An award of costs and expenses of this action together with reasonable attorneys'
        and expert fees; and

r.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial

by jury on all questions of fact raised by the complaint.


Dated: New York, New York
       May 4, 2018

                              Respectfully submitted,

                              **PELTON GRAHAM LLC**


                              By:

                              Brent E. Pelton (BP 1055)
                              pelton@peltongraham.com
                              Taylor B. Graham (TG 9607)
                              graham@peltongraham.com
                              Kristen E. Boysen (KB 0208)
                              boysen@peltongraham.com
                              111 Broadway, Suite 1503
                              New York, New York 10006
                              Telephone: (212) 385-9700
                              Facsimile: (212) 385-0800

                              *Attorneys for Plaintiffs and the putative*
                              *FLSA Collective and Class*

34

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de BKUK Group, Besim Kukaj y sus otros respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

_____
Nombre Escrito

Abraham Campos

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de BKUK Group, Besim Kukaj y sus otros respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

EDER   GORDILLO
_____
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de BKUK Group, Besim Kukaj y sus otros respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.


_____
Firma

_Pavlino Carpintero_
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de BKUK Group, Besim Kukaj y sus otros respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_Samuel Herrera_
Firma

_SAMUEL   HERRERA_
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de BKUK Group, Besim Kukaj y sus otros respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

_____
Voni DeLosSantos
Nombre Escrito