USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _8/10/2021_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                        :

ABRAHAM CAMPOS, et al.,                :

                                                         :        **REPORT AND RECOMMENDATION**

                                                         :        **FOLLOWING DAMAGES INQUEST**

                  Plaintiffs,          :

                                                         :

                  -against-           :        18-CV-4036 (JGK) (KHP)

                                                         :

BKUK 3 CORP. D/B/A LA CARBONARA, et al.,  :

                                                         :

                  Defendants.      :

                                                          :
-------------------------------------------------------------X
                                                         :

BRYAN MACANCELA et al.,          :

                                                         :

                  Plaintiffs,          :

                                                         :

                  -against-           :        18-CV-7507 (JGK) (KHP)

                                                         :

BESIM KUKAJ D/B/A BKUK GROUP and BKUK  :
NYC RESTAURANT GROUP, et al.,       :

                                                          :

                  Defendants.      :

                                                          :
-------------------------------------------------------------X

**TO: THE HONORABLE JOHN G. KOELTL, UNITED STATES DISTRICT JUDGE**
**FROM: KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      Plaintiffs are all former employees of Defendant's restaurants and assert claims under the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 *et seq.,* as well as pendent state claims under the New York Labor Law §§ 190 *et seq*. and 650 *et seq*. ("NYLL"), for unpaid wages, penalties and attorneys' fees and costs.  After entry of default against the Defendants, the Honorable John G. Koeltl referred this action to me for a report and recommendation on damages.  Defendants did not file an opposition to the Plaintiffs' Motion for a Default

1

Judgment, nor did they appear at any point in the damages inquest proceedings.  After review of the submissions, I respectfully recommend that Plaintiffs be awarded damages as set forth in detail below.

## FACTUAL BACKGROUND

Plaintiffs are all former employees who worked for Defendant Besim Kukaj and Corporate Defendants[1] at sixteen of the Defendants' seventeen restaurant[2]  locations throughout New York City during the relevant time period.    There are two categories of Plaintiffs: *Campos* Plaintiffs and *Macancela* Plaintiffs.  The *Campos* Plaintiffs[3] commenced their action on May 4, 2018;  the *Macancela* Plaintiffs[4] commenced their action on August 17, 2018. Plaintiffs were front-of-the-house employees who received tips and worked as servers, bussers, counter workers, runners, and bartenders; and back-of-the-house employees who were non-tipped and prepared and cooked food, cleaned, moved inventory and washed dishes. (ECF No. 203 ¶ 26.)

---

[1] Corporate Defendants BKUK Corp., BKUK 1 Corp., BKUK 2 Corp., BKUK 3 Corp., BKUK 5, BKUK 6 Corp., BKUK 7 Corp., BKUK 8 Corp., BKUK 9 Corp., BKUK 10 Corp., 319 W 51st St Inc., 9th Ave. Lime Jungle Inc., B&R Sorrento Corp., Gallo Nero W 44th Inc., Pio Restaurant LLC, and Zucca Trattoria Inc. are active New York corporations and limited liability companies that have operated restaurants throughout New York City.

[2] During the relevant time period, Defendants have owned, operated and overseen at least seventeen restaurant locations throughout New York City: Gallo Nero, La Carbonara, Serenata Mexican Restaurant, 9th Avenue Lime Jungle, Limon Jungle Chelsea, Luna Piena, Intermezzo, Taqueria Mez-A, Gallo Nero II, Gallo Nero III—closed and re-opened as El Gallo de Oro, Cara Mia, Cara Mia 2, Maria Pia, Pecorina Pizzeria and Zucca Trattoria (collectively, "BKUK" or the "BKUK Enterprise").

[3] **Campos Plaintiffs**: Abraham Campos, Eder Gordillo, Paulino Carpintero, Samuel Herrera, Yoni De Los Santos, Segundo Calle, Jenaro Campoverde, Genc Hasangjekaj, Pellumb Katanolli, Cesar Supacela, and Nicolas Zhagnay.

[4] **Macancela Plaintiffs**: Bryan Macancela, Christian Asitimbay, Mario Asitimbay, Edison Macancela, Milton Quizhpilema, Eduardo (Julio) Yunga, Vladimir Yunga, Felipe Vega-Loyola, Victor Gonzalez, and Diego A. Estrada Cortez.  The following opt-In Plaintiffs are not receiving any damages because no information was submitted regarding their employment and the damages they seek: Juan Agapito Carranza, Rogelio De Jesus Santos, and Jose Vazquez Reyes.

All of the restaurants are owned and operated by Defendant Kukaj, who frequently transferred employees between locations, determined the wages and compensation of the employees at the restaurant, and controlled the hiring and firing of employees.  (ECF No. 203 ¶¶ 19, 20, 24.)  Kukaj sits at the top of all of the Corporate Defendants, which are all active New York corporations and limited liability companies that issued paychecks, paystubs and other employment records to employees for their work at BKUK restaurants. (ECF No. 203, ¶ 11.)

Each of the Plaintiffs submitted sworn declarations in connection with their motion for a default judgment and damages.  (*Campos* and *Macancela* Decls. ECF No. 205 Exs. 1-21*, see also* Suppl Decls. at ECF Nos. 212, 213.)  Each Plaintiff provided their employment position and duration of employment with the Defendants.  *Id.*  Plaintiffs attested that they regularly worked in excess of forty hours per week and in some cases more than ten hours in a day, and that the Defendants failed to pay them the proper amount of wages. (ECF No. 203 ¶¶ 30-34.)  All Plaintiffs allege that Defendants required them to record fewer hours than they actually worked, did not provide accurate statements of wages, and rarely granted Plaintiffs any breaks. (ECF No. 203, ¶¶ 20, 21.)  Additionally, Plaintiffs assert they were required to sign a document misrepresenting their hours worked and never received any notification about their pay rates as required under the NYLL.  (ECF No. 203, ¶¶ 20-23.)   Consequently, Plaintiffs seek unpaid minimum wages, overtime wage damages, spread of hours wage payments, liquidated damages, statutory damages, attorneys' fees, and costs.  The details of the work performed, and amounts claimed are discussed below.

**PROCEDURAL HISTORY**

### A. *Campos Plaintiffs – 18-CV-4036*

The *Campos* Plaintiffs commenced this action on May 4, 2018.  (*Campos* ECF No. 1.)

Plaintiffs served the Complaint on all Defendants by personal service on May 30, 2018 asserting

the following causes of action: (1) violation of the minimum wage provisions of the FLSA; (2)

violation of the overtime provisions of the FLSA; (3)  violation of the New York minimum wage

act; (4) violation of the overtime provisions of the New York State Labor Law; (5) violation of

the spread of hours wage order of the New York Commissioner of Labor; and (6) a number of

violations of the New York Labor Law including violation of wage statement and notice

requirements, unreimbursed business expenses, and unlawful withholding of gratuities.

(*Campos* ECF Nos. 1, 23-32.)  Even though Defendants briefly appeared – they filed an answer

(*Campos* ECF No. 39.) and made an appearance two separate times before both counsels

withdrew (*Campos* ECF Nos. 54-55.) – they have failed to appear or respond to Plaintiffs in any

substantial way since December 14, 2018.

On May 20, 2020, the Clerk of the Court entered a certificate of default.[5]  (*Campos* ECF

No. 136.)  On July 21, 2020, Defendants were ordered to show cause by August 3, 2020 as to

why a default judgment should not be entered against them, but they failed to appear.

(*Campos* ECF No. 140.)  On October 30, 2020, Plaintiffs submitted a request to enter a default

---

[5] The Clerk of Court entered default as to all *Campos* and *Macancela* Defendants except BKUK 1 Corp. d/b/a/ Pecorino Pizzeria. Plaintiffs believe that the confusion may have occurred due to Plaintiffs' discussion in the Proposed Certificate of Default (ECF No. 188.) of Affidavits of Service of the *Macancela* Class Action Complaint filed in September 2018.  While Plaintiffs did serve all Defendants at that time *(see Macancela* ECF No. 55.), Plaintiffs erroneously failed to list BKUK 1 Corp.  Since the Plaintiffs have served all other materials, including the Default and Order to Show Cause materials on BKUK 1 Corp, this Court recommends that BKUK 1 Corp. be included as a defaulting defendant with liability.

judgement and provided information on damages with supporting declarations.  (*Campos* ECF

Nos. 146-150.)  These papers were served on Defendants on October 30, 2020. (*Campos* ECF

No. 151.)

### B. *Macancela Plaintiffs – 18-CV-7507*

The *Macancela* Plaintiffs commenced this action on August 20, 2018.  (*Macancela* ECF

No. 20.)  Plaintiffs served the Complaint on all Defendants, by personal service on September 5,

2018, asserting the same causes of action delineated above. (*Macancela* ECF Nos. 20, 55-70,

73.)  Defendants never filed an answer and failed to appear or respond to Plaintiffs.  On

October 16, 2018, the Clerk of the Court entered a certificate of default.  (*Macancela* ECF No.

83.)  On October 22, 2018, Defendants were ordered to show cause at a hearing scheduled for

November 8, 2018. (*Macancela* ECF No. 89.)  Notice of the order to show cause hearing was

served on all of the Defendants on October 30, 2018. (*Macancela* ECF Nos. 90-105.)

On November 7, 2018, Defendants made a notice of appearance and sought a pre-

motion conference to file a motion to dismiss.  (*Macancela* ECF Nos. 106-108.)  As a result of

Defendants' appearance, the show cause hearing was adjourned and defense counsel filed a

letter motion requesting a conference to file a motion to dismiss. (*Macancela* ECF No. 114.)

Shortly thereafter, defense counsel withdrew from representation. (*Macancela* ECF Nos. 119-

121.)

On February 15, 2019 a motion was filed to consolidate the case with 18-CV-4036 (i.e.,

the *Campos* case). (*Macancela* ECF No. 132.)  On April 3, 2019, the Honorable John G. Koeltl

certified this case as a Rule 23 Class Action. (*Macancela* ECF No. 140.)

On May 20, 2020, Plaintiffs submitted a proposed certificate of default. (*Macancela* ECF No. 188.)  Also on May 20, 2020, the Clerk of the Court entered the certificate of default. (*Macancela* ECF No. 190.)  On July 21, 2020, the Honorable John G. Koeltl ordered that the Defendants show cause by August 3, 2020 as to why a default judgement should not be entered against the, but they failed to appear. (*Macancela* ECF No. 195.) Plaintiffs submitted a motion for default judgement and provided information on damages with supporting declarations. (*Macancela* ECF Nos. 201-205.)  These papers were served on Defendants on October 30, 2020. (*Macancela* ECF No. 206.)

The following recommendations are based on the facts asserted in both Complaints, as well as evidence presented in Plaintiffs' declarations and moving papers.

## DISCUSSION

### I.   **Default Judgment**

Federal Rule of Civil Procedure ("Rule") 55 governs judgments against a party that has failed to plead or otherwise defend itself in an action.  *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61 (2d Cir. 1981) (defendant's ongoing failure to appear supported failure to plead for the purpose of entry of default).  Rule 55 requires a two-step process for an entry of a default judgement.  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).  First, upon notification from the moving party, the court clerk enters a default of the party who failed to defend. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 505 (2d Cir. 2011) (citing Fed. R. Civ. P. 55(a)). Second, once the clerk issues a certificate of default, the moving party may apply for entry of default judgment pursuant to Rule 55(b).  *Id*.  A default constitutes an admission of all well-pleaded factual allegations in the complaint, and the allegations as they pertain to liability are

deemed true.  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.

1992).  However, plaintiffs are not entitled to a default judgment as a matter of right merely

because the opposing party is in default.  *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108,

118 (E.D.N.Y. 2013).  Plaintiffs bear the burden to demonstrate that their uncontroverted

allegations, without more, establish the defendant's liability on each asserted cause of action.

*La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 348 (E.D.N.Y. 2009).

To determine whether a motion for default judgment is warranted, courts within this

district consider three factors: (1) whether the defendant's default was willful; (2) whether the

defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-

defaulting party would suffer as a result of the denial of the motion for default judgment.

*Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013) (applying these factors

in review of lower court's grant of a default judgment).

Here, Plaintiffs have satisfied the two-step procedural requirements of Rule 55 by

submitting a request for both entry of default and default judgment following the issuance of

the clerk's certification.  (*Campos* ECF Nos. 146-150, *Macancela* ECF Nos. 201-205.)

Additionally, all three of the foregoing factors weigh in Plaintiffs favor.  The Defendants' failure

to sustain an appearance and to respond to either Plaintiffs' Complaints or Motions for a

Default Judgment are indicative of willful conduct. *See Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d

57, 60 (2d Cir. 1996) (Second Circuit courts look for evidence of bad faith or more than mere

negligence to satisfy the willfulness standard).  Even though Defendants in this case briefly filed

an answer in the *Campos* action, the Defendants cannot assert any meritorious defenses to

Plaintiffs' claims because they failed to respond or make any appearance thereafter. (*Campos*

ECF No. 39.); *see also Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 31 (E.D.N.Y.

2015) (court reasoned that a meritorious defense cannot be established where the defendant

has not filed an answer, made an appearance and responded to the claims in the case).   And,

Plaintiffs will be prejudiced if denied the ability to seek judgment by default because the

Plaintiffs will have no alternative legal redress to recover the amounts due to them for the work

performed during their employment.

Generally, a defendant's default is an admission of the plaintiff's well-pleaded

allegations as to liability but not for purposes of determining damages.  *See Greyhound*

*Exhibitgroup*, 973 F.2d 155, 158 (2d Cir. 1992).  Even when a defendant has defaulted, a

substantive analysis of the alleged claims is required to determine whether the plaintiff may be

awarded damages, and proof of damages is required.  *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir.

1974).  Below I first address the Defendants' liability with respect to the FLSA and NYLL based

on the allegations in the pleadings and Plaintiffs' declarations.  Then I address damages.

**II.**   **Liability**

    **a.  Unpaid Wages Under the FLSA and NYLL**

The FLSA was enacted by Congress to "protect all covered workers from substandard

wages and oppressive working hours, 'labor conditions [that are] detrimental to the

maintenance of the minimum standard of living necessary for the health, efficiency and general

well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys. Inc.,* 450 U.S. 728, 739, 101 S.

C.t 1437, 67 L.Ed. 2d 641 (1981) (quoting 29 U.S.C. § 202(a)).  To establish a claim under the

FLSA, a plaintiff must show that: (1) he or she was an "employee" of the defendants, as defined

by the statute; (2) that the defendants were employers engaged in commerce; and (3) that the

employment relationship was not exempt from the FLSA.  *See Dejesus v. HF Mgmt. Servs., LLC, 72*6 F.3d 85, 90 (2d Cir. 2013) (plaintiff alleged facts about employment status and duties to satisfy FLSA claim).

Section 206 of the FLSA sets forth the minimum hourly wage that employers must pay their employees. *Id.* 29 U.S.C. § 206(a)(1)(C).  Section 207 specifies that an employer must pay employees who work more than forty hours during a workweek for the excess hours "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1).  There is a presumption that an employee is entitled to overtime; an employer bears the burden of proving that an employee is exempt from overtime.  29 USC § 207(a)(1); *Bilyou v. Dutchess Beer Distributors, Inc.,* 300 F.3d 217, 222 (2d Cir. 2002) (recognizing that exempt status under the FLSA is an affirmative defense).  Employers who violate the FLSA's minimum wage and overtime provisions are liable for the amount of unpaid wages and an additional equal amount as liquidated damages. 29 USC § 216(b).

New York's Labor law is the state analogue to the federal FLSA.  Although the Labor Law "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of sales," it otherwise mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime.  *Ramos v. Baldor Specialty Foods, Inc.,* 687 F.3d 554, 556 (2d Cir. 2012).  The New York Labor Law also expressly provides that employees are entitled to recover all unpaid wages and liquidated damages at a rate of 100 percent of the wages due. *See* N.Y. Lab. Law § 198(3); *Chun Jie Yin*, 2008 WL 906736, at *6; *Jowers v. DME Interactive Holdings, Inc.,* No. 00 Civ. 4753, 2006 WL 1408671, at *9 (S.D.N.Y. May 22, 2006).

New York's minimum wage was at all relevant times higher than the federal minimum wage.[6] § 7:89. Hospitality Industry Minimum Wage Order, 13A N.Y. Prac, Employment Law in New York § 7:89 (2d ed.); *see also* Dept. of Lab. New York City Minimum Wage rates at https://dol.ny.gov/minimum-wage-0 (last visited Aug. 9, 2021).    Under applicable law, some Plaintiffs are entitled to New York's more generous minimum wage and overtime rates.  *Gao v. Jian Song Shi,* No. 18 CV 2708 (ARR)(LB), 2021 WL 1949275, at *11 (E.D.N.Y. Apr. 30, 2021), *report and recommendation adopted sub nom. Bin Gao v. ABC Corp.,* No. 18CV2708ARRLB, 2021 WL 1946322 (E.D.N.Y. May 15, 2021) (Court applied NY's minimum wage damages because they are more generous under the NYLL than under FLSA.)

Here, Plaintiffs all attested that Defendants were their employer and that they were employed by Defendants.  (*Campos* and *Macancela* Decls. ECF No. 205 Exs. 1-21.)  They assert that Defendants hired them, supervised and controlled their work schedules, and determined the rate and method of compensation in exchange for their work. *Id. Rahman v. Red Chili Indian Café, Inc.*, 17-cv-5156, 2021 WL 2003111 (S.D.N.Y. May 19, 2021) (in default judgment context, finding allegations in complaint that restaurant and its owner had the power to hire and fire employees and set wages was sufficient to establish that both the entity and its owners were employers under the FLSA); *see also* 29 U.S.C. § 203(d, e); NY LL 190(2, 3); *Irizarry v. Catsimatidis,* 722 F.3d 99, 104–111 (2d Cir. 2013) (An "employer" may include an individual

---

[6] The federal minimum wage during Plaintiffs' employment was $7.25.  29 U.S.C. § 206(a)(1). The federal overtime rate is 1.5 x the employee's regular hourly rate.  29 U.S.C. § 207(a)(1).  In New York City, the minimum wage for employees in restaurants with more than 11 employees was $7.25 per hour from January 1, 2012 through December 31, 2013; $8 per hour from December 31, 2013 through December 30, 2014; $8.75 per hour from December 31, 2014 through December 30, 2015; $9.00 per hour from December 31, 2015 to December 30, 2016; $11 per hour from December 31, 2016 to December 30, 2017; $13 per hour from December 31, 2017 to December 30, 2018; and $15 per hour from December 30, 2018 to the end of Plaintiffs' employment. Art. 19 NYLL Sec. 652. The overtime rate also is 1.5 times the regular rate. Hospitality Industry Wage Order 146-1.4.

owner who exercises sufficient operational control over employees).  Thus, Plaintiffs have met the requirement of demonstrating that Defendants were employers and that they were employees.

Plaintiffs also attest that the restaurants did more than $500,000 in business, thereby meeting the statutory threshold for coverage under the FLSA.  (ECF No. 203 at p. 8, ¶ 9; *Campos* Ans. ¶ 36.); 29 USC § 203(s)(1)(A)(i)-(ii).  Additionally, the Defendants were directly engaged in interstate commerce by, for example, using on a daily basis goods produced outside of the State of New York.  (ECF No. 203 at pp. 9-10, ¶ 16.)  This is sufficient to demonstrate that Defendants were engaged in commerce.  *Rahman*, 2021 WL 2003111 (S.D.N.Y. May 19, 2021).

The FLSA exempts certain employees from minimum wage and overtime wage protections; however, general laborers carrying out work such as cooking, dishwashing and food preparation, as well as front-of-house workers such as servers and waiters at a restaurant generally are not exempt.  *See, e.g., Solis v. SCA Rest. Corp*., 938 F. Supp. 2d 380, 398 (E.D.N.Y. 2013) (finding that chef was not exempt from overtime eligibility); *Fermin v. Las Delicias Peruanas Rest., Inc.,* 93 F. Supp. 3d 19, 32–33 (E.D.N.Y. 2015) (Plaintiffs' respective jobs as waiter, kitchen helper/food preparer, cook and dishwasher all constitute non-exempt employment under the FLSA. *Docket No. 1* ¶¶ 20–21, 36, 41); *Fasanelli v. Heartland Brewery, Inc.,* 516 F. Supp. 2d 317, 320–22 (S.D.N.Y. 2007) (stating that waiters, bartenders, runners and/or bussers were non-exempt employees under the FLSA).

Given the presumption that an employee is entitled to overtime and Defendants' failure to appear and meet their burden that Plaintiffs fall under a specific exemption, Plaintiffs have satisfied their entitlement to unpaid wages, including overtime, under the FLSA.

Because the analysis under New York law is the same, Plaintiffs also have satisfied their burden in demonstrating Defendants' exposure to liability under the New York Labor law. *Debejian v. Atl. Testing Labs., Ltd.,* 64 F. Supp. 2d 85, 87, n. 1 (N.D.N.Y. 1999) (finding New York Labor Law provisions "substantially similar to the federal scheme" such that its analysis of federal law would apply equally to claims brought under the FLSA and New York law).

Importantly, claims brought under the FLSA and the NYLL are subject to different statutes of limitations.  Under the FLSA, claims are subject to a two-year statute of limitations if the violation is not willful and a three-year statute of limitations if the violation is willful.  *See Pineda v. Masonry Const. Inc.*, 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011) (citing 29 U.S.C. § 255(a)).  When defendants are in default, the court may accept the plaintiff's allegation that the defendants' violation was willful, such that a three-year statute of limitations would apply in this case.  *See Angamarca v. Pita Grill 7 Inc.*, No. 11-cv-7777 (JGK) (JLC), 2012 WL 3578781, at *4 (S.D.N.Y. Aug. 2, 2012) (accepting plaintiff's allegation of defendants willful violation where defendants defaulted).  Claims brought pursuant to the NYLL are subject to a six-year statute of limitations. *See Pineda*, 831 F. Supp. 2d at 674 (citing NYLL § 663(1), (3)).  Plaintiffs' damage calculations were careful to provide computations for the time periods of employment under both the FLSA and NYLL statues.  In this case, five Plaintiffs were employed solely within the three-year FLSA statute of limitations period, and thus are not entitled to certain state law relief.  These Plaintiffs are: E. Gordillo, D. Estrada Cortez, V. Gonzalez, M. Quizhpilema, and F. Vega-Loyola.  However the bulk of the Plaintiffs – 16 – were employed for longer than three years prior to the filing of this suit and are entitled to certain additional relief under state law. In all cases, Plaintiffs are afforded relief under the law which provides the more generous

computation of damages.  *See, e.g., Elisama v. Ghzali Gourmet Deli Inc.*, No. 14-cv-8333 (PGG)

(DF), 2016 WL 11523365, at *11 (S.D.N.Y. Nov. 7, 2016) (applying NYLL's six-year statute of

limitations because it provided the greatest measure of relief), *adopted by* 2018 WL 4908106

(S.D.N.Y. Oct. 10, 2018); *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498, 515-16

(S.D.N.Y. 2017) (same), *aff'd,* 752 F. App'x 33 (2d Cir. 2018).[7]

I turn next to Plaintiffs' allegations regarding their hours worked and pay to assess

whether they have demonstrated that they are entitled to unpaid minimum wage and/or

overtime under federal and/or state law.  Plaintiffs each provided a declaration detailing their

hours worked, days in the restaurant(s) and work schedules. (*Campos* and *Macancela* Decls.

ECF No. 205 Exs. 1-21.)   Plaintiffs allege that Defendants regularly required Plaintiffs to work in

excess of forty hours per week, failed to pay them overtime or minimum wage, failed to

provide any wage statement or notice of accounting for actual hours worked, and accrued fees

for bounced and withheld checks.  (*Campos* and *Macancela* Decls. ECF No. 205 Exs. 1-21.)

Based on the information proffered, the following Plaintiffs did not work at a rate below

the minimum wage requirements of either federal or state law: M. Asitimbay, S. Calle, P.

Carpintero, D. Estrada Cortez, and M. Quizhpilema.  At all relevant times during their

employment, all of these Plaintiffs were making more per hour than the minimum wage in New

York City, which is also above the federal minimum wage rate.  Thus, none of them has a

---

[7] The *Campos* Action was filed on May 4, 2018, meaning that claims for unpaid wages before May 4, 2012 with respect to these Plaintiffs are time-barred under New York Law. N.Y. Labor Law § 663(3).  Similarly, the *Macancela* Action was filed on August 17, 2018, meaning that claims for unpaid wages before August 17, 2012 are time-barred under New York law.  *Id.*  The FLSA period is May 4, 2015 for the *Campos* Action and August 17, 2015 for the *Macancela* Action.  This Court has carefully reviewed Plaintiffs' revised damages computations in their excel spreadsheets and confirmed that they have not included a request for damages outside of the applicable statutes of limitations periods.

minimum wage claim.  However, none of these Plaintiffs were paid time and a half for their

overtime hours.  Instead, they were paid the same hourly rate for all hours worked.  Thus, they

were not paid their full overtime rate for hours worked in excess of forty in a week.

Other Plaintiffs did work at a rate below the minimum wage including: C. Asitimbay, A.

Campos, Y. De Los Santos,  V. Gonzalez, E. Gordillo, S. Herrera, B. Macancela, E. Macancela, C.

Supacela, E. Julio Yunga, and V. Yunga.  At all relevant times during their employment, these

Plaintiffs were making less than the minimum wage in New York City.  Therefore, they each

have a minimum wage claim under New York law.  Additionally, none of these Plaintiffs were

paid time and half for their overtime hours.  Thus, they were not paid their full overtime rate

for hours worked in excess of forty in a week.

Lastly, there were five Plaintiffs who were paid at a rate below the minimum wage for a

portion of their employment and paid above the minimum wage rate at a different time during

their employment.  These Plaintiffs were: G. Hasangiekaj, P. Katanolli, F. Vega-Loyola, N.

Zhagnay, and J. Campoverde.  Their individual declarations provide information about the time

periods when they were paid below minimum wage.  For example, G. Hasangiekaj was

employed from February 1, 2013 through January 31, 2016, and worked at a rate below the

minimum wage from February 1, 2013 through March 31, 2014.  P. Katanolli was employed

from April 1, 2015 through February 28, 2018, and worked at a rate below the minimum wage

from January 1, 2018 to February 28, 2018.  F. Vega-Loyola worked from March 1, 2017 through

May 31, 2018, and worked at a rate below the minimum wage from March 1, 2017 through

December 31, 2017.  N. Zhagnay worked from May 3, 2012 through March 1, 2019, and worked

at a rate below the minimum wage from January 1, 2015 through March 1, 2019.  J.

Campoverde worked from May 3, 2012 through March 1, 2019, and worked at a rate below the minimum wage from May 3, 2012 through December 31, 2018.  Additionally, none of these five Plaintiffs were paid time and half for their overtime hours.  Thus, they were not paid their full overtime rate for hours worked in excess of forty in a week.

To calculate the amount of minimum wages due to Plaintiffs, Plaintiffs' counsel subtracted the effective hourly wage rate each respective Plaintiff was receiving from the statutory minimum wage.  Then, counsel multiplied the minimum wage differential amount by the average hours that were worked per week.  Counsel broke down each Plaintiff's employment by time period to provide for the changing statutory minimum wage rate and the average hours worked per week in the period.   After carefully reviewing the computations against the Plaintiffs' declarations and applicable law, the Court has confirmed the accuracy of the computations and includes the correct amounts due to each Plaintiff for minimum wage violations in the chart attached to this report and recommendation.

The Court has likewise reviewed the overtime damages requested by Plaintiffs' counsel to confirm they are correct based on Plaintiff's declarations and applicable law and found them to be correct and that overtime is due to all of the Plaintiffs except V. Gonzalez, E. Macancela, E. Yunga and V. Yunga, as set forth in the chart attached to this report and recommendation. To calculate overtime, the Court multiplied the number of hours worked in a week beyond 40 by the applicable overtime rate.  In those cases where an individual Plaintiff attested that he had received straight time rate for all hours worked, the Court credited this amount toward overtime, such that the amount due reflects only the half-time rate due. *Polanco v. Brookdale Hosp. Med. Ctr.,* 819 F. Supp. 2d 129, 132 (E.D.N.Y. 2011) (employers must pay employees at a

rate of not less than one and one-half times the employee's regular rate for hours worked in excess of forty hours per week. *Id.* § 207(a).)

     **b.** __New York Labor Law Spread of Hours Pay__

Nineteen Plaintiffs also seek damages for non-payment of so-called "spread of hours" pay.  Under New York law, certain employees who work more than ten hours in a day can recover an extra hour's worth of pay at the state minimum wage rate for each such day. N.Y. Comp. Codes R. & Regs. Tit. 12, § 142-2.4.  Section 663 of the Labor Law expressly authorizes an employee to sue his or her employer to recover unpaid wages otherwise due to him or her under the statute. N.Y. Lab. Law § 663(1).

Plaintiffs' Declarations detailed the amount of times they worked in excess of 10 hours in one day in one week.  The following Plaintiffs attest that they worked more than ten hours in one work day:  J. Campoverde, F. Vega-Loyola, E. Yunga, V. Yunga, D. Estrada Cortez, C. Supacela, E. Macancela, B. Macancela, S. Herrera, E. Gordillo, V. Gonzalez, Y . De Los Santos, M. Asitimbay, A. Campos, P. Katanolli, G. Hasangjekaj, S. Calle, N. Zhagnay, and C. Asitimbay.  Thus, these Plaintiffs have established that they are entitled to spread of hours pay for these days. *Fermin v. Las Delicias Peruanas Rest., Inc.,* 93 F. Supp. 3d 19 (E.D.N.Y. 2015) (Restaurant employees were entitled to recover spread–of–hours pay pursuant to NYLL, where employees at times worked in excess of ten hours in per day, and employer failed to pay them NYLL minimum wage.); 12 N.Y.C.R.R. § 142–2.4.

Plaintiff's counsel provided a detailed accounting that denoted the amount of times these Plaintiffs worked more than 10 hours a day in one week.  Additionally, counsel was careful to include the change in minimum wage during the period of employment when these

Plaintiffs worked more than ten-hour days and included the amount of days per week when

each Plaintiff worked in excess of ten hours.  This Court has carefully reviewed the calculations

provided by Plaintiffs' counsel against Plaintiffs' declarations and applicable law and finds that

the amounts requested are warranted and due.  The amounts that should be awarded to each

Plaintiff for spread of hours pay is provided in the chart attached to this report and

recommendation.

        **c.**  **Liquidated Damages**

      Plaintiffs seek liquidated damages under both the FLSA and New York's Labor Law.

Both laws provide for liquidated damages in an amount equal to the unpaid wage.  Under the

NYLL, "liquidated damages are presumed unless defendants can show subjective good faith."

*Zubair v. EnTech Eng'g, P.C.*, 900 F. Supp. 2d 355, 360 n.3 (S.D.N.Y. 2012); see N.Y. Lab. Law §

663(1).  As Defendants have defaulted, they have not established the good faith necessary to

rebut the liquidated damages presumption.  For similar reasons, Plaintiffs are entitled to

liquidated damages under federal law.  By virtue of Defendants' default, their failure to pay

appropriate wages can be deemed willful, entitling them to liquidated damages.  *Id.*

      To the extent Plaintiffs request recovery of liquidated damages under both the FLSA and

the NYLL, I recommend that their request be denied.  It is well established that Plaintiffs cannot

recover liquidated damages under both statutes. *See Rana v. Islam*, 887 F.3d 118, 122-23 (2d

Cir. 2018); *see also Guinea v. Garrido*, No. 19-CV-5860 (E.D.N.Y. Jan. 13, 2020) (Plaintiff's

counsel included Judge Cogan's decision and order with their papers).  Accordingly, I

recommend awarding liquidated damages only under one statute and have included the

recommended amounts for each Plaintiff in the chart below, using the statute that provides the

more generous award:

| Plaintiff | Amount of FLSA Liquidated Damages Claimed | Amount of NYLL Liquidated Damages Claimed | Award Recommended |
|---|---|---|---|
| S. Calle | $6,050.73 | $15,564.97 | $15,564.97 |
| A. Campos | $57,826.39 | $75,750.13 | $75,750.13 |
| J. Campoverde | $9,736.37 | $10,938.25 | $10,938.25 |
| P. Carpintero | $10,211.15 | $2,189.11 | $10,211.15 |
| Y. De Los Santos | $70,539.45 | $13,907.33 | $70,539.45 |
| E. Gordillo | $48,909.57 | $3,900.29 | $48,909.57 |
| G. Hasangjekaj | $15,678.52 | $23,505.00 | $23,505.00 |
| S. Herrera | $75,940.94 | $18,487.49 | $75,940.94 |
| P. Katanolli | $63,318.54 | $6,879.50 | $63,318.54 |
| C. Supacela | $91,332.81 | $72,727.75 | $91,332.81 |
| N. Zhagnay | $84,894.94 | $46,734.83 | $84,894.94 |
| C. Asitimbay | $50,924.89 | $34,180.43 | $50,924.89 |
| M. Asitimbay | $2,251.84 | $6,782.45 | $6,782.45 |
| D.Estrada Cortez | $5,065.71 | $1,324.00 | $5,065.71 |
| V. Gonzalez | $22,651.43 | $1,435.43 | $22,651.43 |
| B. Macancela | $57,836.87 | $43,275.42 | $57,836.87 |
| E. Macancela | $29,140.14 | $15,504.11 | $29,140.14 |
| M. Quizhpilema | $3,292.21 | _____ | $3,292.21 |

| | | | |
|---|---|---|---|
| F. Vega-Loyola | $8,875.00 | $4,547.14 | $8,875.00 |
| E. Yunga | $34,399.38 | $22,912.41 | $34,399.38 |
| V. Yunga | $34,399.38 | $22,912.41 | $34,399.38 |

### III.   **Statutory Damages**

Plaintiffs also seek statutory damages for Defendants' failure to provide wage notices in compliance with New York's Wage Theft Prevention Act ("WTPA"), and NYLL § 195(1) and (3), which requires employers to "provide [their] employees, in writing . . . a notice containing . . . the rate or rates of pay thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other allowances." N.Y. Lab. Law. § 195(1) and (3).  NYLL § 198 sets the amount of statutory damages an employee may recovery for violations of NYLL § 195.

Regarding wage notices, in 2011, the WTPA required employers to provide written wage notices "at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer." N.Y. Lab. Law § 195(1-a) (eff. Apr. 9, 2011 to Feb. 27, 2015).  Failure of the employer to follow this resulted in a $50 per week payment to the employee with a maximum recovery of $2,500 per employee.  Subsequently, the WTPA was amended, effective February 27, 2015, to provide that employers were only required to provide written wage notices "at the time of hiring" and/or within ten days of their hire date. 2014 N.Y. Laws ch. 537 § 1, amending N.Y. Lab. Law § 195(1-a).  Failure to follow this results in a $50 per day payment to the employee with a maximum recovery of $5,000.00 per employee. NYLL § 198(1-b).

All Plaintiffs attest that they never received a written wage notice at the time of hiring or anytime thereafter. (*Campos* and *Macancela* Decls. ECF No. 205 Exs. 1-21.)  Because Defendants are in default, this Court accepts Plaintiffs' allegations that Defendants failed to provide them with the required notices. *See Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-cv-10234 (JGK) (JLC), 2016 WL 4704917, at *14 (S.D.N.Y. Sept. 8, 2016) (awarding plaintiff statutory damages under NYLL § 195(1) and (3) where defendants defaulted), *adopted sub nom. by Xochimitl v. Pita Grill of Hell's Kitchen, Inc*, No. 14-cv-10234 (JGK), 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016).  Certain Plaintiffs began their employment prior to the 2015 amendment, which required employers to provide wage notices at the time of hiring and on or before February of each subsequent year of employment.  According to the 2011 WTPA, this would entitle them to the maximum recovery of $2,500 per employee. N.Y. Lab. Law § 195(1-a) (eff. Apr. 9, 2011 to Feb. 27, 2015).  However, at least one court in the District has permitted a plaintiff to recover the cap established by the 2015 amendment when the plaintiff's wage rate changed after the amendment. *Cuzco v. F & J Steaks 37th Street LLC*, No. 13-CV-1859, 2014 WL 2210615, at *4 (S.D.N.Y. May 28, 2014).

There are a number of Plaintiffs who will be able to recover under the 2015 Amendment because their wage rate changed during their employment and after the 2015 Amendment. However, a number of Plaintiffs never had a wage increase that changed during their entire time of employment, and are therefore not entitled to recover under the 2015 amendment and can only recover the maximum of $2,500.  These Plaintiffs are: C. Asitimbay, M. Asitimbay, E. Yunga, and V. Yunga.  Additionally, for the Plaintiffs who began their employment after the 2015 Amendment and never received a wage notice, they are able to recover the maximum

amount of $5,000.00: D. Estrada Cortez, V. Gonzalez, M. Quizhpilema, F. Vega-Loyola.  The

amounts that should be awarded for Plaintiffs for violation of the state wage notice

requirement is provided in a chart below.

Regarding wage statements, the WTPA formerly entitled employees to recover statutory

damages for violations of the wage statement requirement of $100 per work week, not to

exceed $2,500." *Baltierra v. Advantage Pest Control Co*., No. 14 CV 5917, 2015 WL 5474093, at

*10 (S.D.N.Y. Sept. 18, 2015) (citation omitted); *accord Inclan*, 95 F. Supp. 3d at 501; *see also*

2010 N.Y. Laws ch. 564 § 7, amending N.Y. Lab. Law § 198(1-d).  By amendment, effective

February 27, 2015, the law changed to allow employees to recover statutory damages of $250

dollars "for each work day that the violations occurred or continue to occur," not to exceed

$5,000. 2014 N.Y. Laws ch. 537 § 2, amending N.Y. Lab. Law § 198(1-d); *see also Zhang v. Red*

*Mtn. Noodle House Inc*., No. 15 CV 628, 2016 WL 4124304, at *6 (E.D.N.Y. July 5, 2016), report

and recommendation adopted, 2016 WL 4099090 (E.D.N.Y. Aug. 2, 2016).

Plaintiffs asserted that they rarely, if ever, received wage statements with their pay. and

when they did, they were inaccurate. (*Campos* and *Macancela* Decls. ECF No. 205 Exs. 1-21.)

Consistently, every Plaintiff attested that Defendants prohibited recording more than 27 hours

per week. *Id.*  Thus, when paystubs were received, they were not accurate insofar as they did

not accurately reflect the hours actually worked.  *Id. See Copper v. Calvary Staffing, LLC,* 132 F.

Supp. 3d 460, 467-68 (E.D.N.Y. 2015) (Plaintiff adequately pled a wage statement violation by

alleging Defendants maintained inaccurate time records and paid them according to those

inaccurate time records and not in the hours actually worked.)  The applicable law provides for

$250 dollars in damages for each work day, totaling no more than $5,000. *See* N.Y. Lab. Law §

198(1-d).  Defendants failed to comply with § 195(3) throughout the period of Plaintiffs'

employment and for days beyond when the statutory cap was reached.  Thus, all Plaintiffs are

entitled to the $5,000 statutory maximum in damages.

Accordingly, I respectfully recommend that each Plaintiff be awarded statutory damages

in the following amounts.

| Plaintiff | Wage Notice | Wage Statement | Total |
|---|---|---|---|
| C. Asitimbay | $2,500 | $5,000 | $7,500 |
| M. Asitimbay | $2,500 | $5,000 | $7,500 |
| E. Yunga | $2,500 | $5,000 | $7,500 |
| V. Yunga | $2,500 | $5,000 | $7,500 |
| D. Estrada Cortez | $5,000 | $5,000 | $10,000 |
| V. Gonzalez | $5,000 | $5,000 | $10,000 |
| M. Quizhpilema | $5,000 | $5,000 | $10,000 |
| F. Vega-Loyola | $5,000 | $5,000 | $10,000 |
| S. Calle | $5,000 | $5,000 | $10,000 |
| Campos | $5,000 | $5,000 | $10,000 |
| J. Campoverde | $5,000 | $5,000 | $10,000 |
| P. Carpintero | $5,000 | $5,000 | $10,000 |
| Y. De Los Santos | $5,000 | $5,000 | $10,000 |
| E. Gordillo | $5,000 | $5,000 | $10,000 |
| G. Hasangjekaj | $5,000 | $5,000 | $10,000 |

| | | | |
|---|---|---|---|
| S. Herrera | $5,000 | $5,000 | $10,000 |
| P. Katanolli | $5,000 | $5,000 | $10,000 |
| C. Supacela | $5,000 | $5,000 | $10,000 |
| N. Zhagnay | $5,000 | $5,000 | $10,000 |
| Macancela | $5,000 | $5,000 | $10,000 |
| E. Macancela | $5,000 | $5,000 | $10,000 |

## IV.    Fees Incurred for Bounced Checks

Certain Plaintiffs also assert that Defendants failed to reimburse them for bounced checks. (ECF No. 202 at p. 30.)  Specifically, certain paychecks issued by Defendants bounced due to insufficient funds, causing Plaintiffs to incur bank fees.  *Id*.  A number of Plaintiffs alleged that they were charged money for bounced checks but  failed to provide specific information as to the amount of fees incurred or the number of times when such fees were incurred.   These Plaintiffs include: C. Asitimbay, M. Asitimbay, D. Estrada Cortez, B. Macancela, and V. Yunga. Thus, these Plaintiffs have not provided sufficient information to demonstrate damages for bounced checks and I recommend that they not be awarded anything for these purported damages.

In contrast, other Plaintiffs provided either documentation of the bounced paycheck or specific information about the incidents when the banks charged them a fee for a bounced check.  After reviewing the evidence presented, I recommend that these Plaintiffs, who are listed in the chart below, be awarded amounts for fees incurred due to their paychecks being bounced.  *See Trustees of Loc. 813 Ins. Tr. Fund v. All Cty. Funeral Serv., Inc.,* No.

18CV737ENVRER, 2019 WL 5088285, at *1 (E.D.N.Y. Aug. 7, 2019), *report and recommendation adopted*, No. 18CV737ENVRER, 2019 WL 5087097 (E.D.N.Y. Oct. 10, 2019) (Plaintiffs submitted adequate evidence to recover $35 for the bounced check fee incurred.); *see also Blue v. Finest Guard Servs.*, No. 09-cv-133, 2010 U.S. Dist. LEXIS 73223, at *37 (awarding bounced check fees) (E.D.N.Y. June 24, 2010); *Shim v. Millennium Group*, No. 08-cv-4022, 2009 U.S. Dist. LEXIS 124107, at *14 (E.D.N.Y. Oct. 2, 2009) (same).

| Plaintiff | Amount Owed: |
|---|---|
| A. Campos | $90.00 |
| E. Gordillo | $258.00 |
| P. Carpintero | $156.00 |
| S. Herrera | $60.00 |
| Y. De Los Santos | $170.00 |
| N. Zhagnay | $144.00 |
| J. Campoverde | $120.00 |
| S. Calle | $624.00 |
| C.  Supacela | $360.00 |
| P. Katanolli | $240.00 |
| G. Hasangjekaj[8] | $30.00 |
| E. Julio Yunga | $37.00 |
| V. Gonzalez | $24.00 |

---

[8] Plaintiff Hasangjekaj's Declaration attested that his bank charged him fees between $12-$30.00, but did not specify how many times or when this occurred.  (Hasangjekaj Suppl. Decl. ¶ 5.)  Therefore, I recommend awarding him only $30.

| | |
|---|---|
| M. Quizhpilema | $24.00 |
| F. Vega-Loyola | $12.00 |
| E. Macancela | $24.00 |

## V.     **Attorneys' Fees**

The FLSA and NYLL both provide for an award of reasonable attorneys' fees to successful plaintiffs. *See* 29 U.S.C. § 216(b); NYLL §§ 198(1-a), 663(1). Plaintiffs are represented by two law firms: Pelton Graham LLC and the Howley Law Firm. Plaintiffs seek a total of $92,861.67 in attorney's fees for Pelton Graham LLC and $77,440.00 in attorney's fees for The Howley Law Firm. (ECF No. 202 at p. 22.)

Attorneys' fee awards are typically determined using the lodestar approach, or "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro–North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010). "The reasonable hourly rate is the rate a paying client would be willing to pay," bearing in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. In assessing whether an attorney's hourly rate is reasonable, courts may rely on their own knowledge of a firm's hourly rates. *See Gurung v. Malhotra*, 851 F. Supp. 2d 583, 596 (S.D.N.Y. 2012) (citing *Miele v. New York State Teamsters Conference Pension & Ret. Fund,* 831 F.2d 407, 409 (2d Cir. 1987)). "Courts in this District have determined in recent cases that a fee in the range of $250 to $450 is appropriate for experienced litigators in wage-and-hour cases."

*Xochimitl*, 2016 WL 4704917, at *20 (finding a range of $250 to $450 per hour reasonable; collecting cases); *see also  Lopez v. Emerald Staffing, Inc.*, No. 18 CIV. 2788 (SLC), 2020 WL 915821, at *13 (S.D.N.Y. Feb. 26, 2020) ("In this district, courts generally award experienced wage-and-hour attorneys between $300 to $400 per hour").

In assessing whether the number of hours billed by the attorney is reasonable, courts consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted).  Plaintiff bears the burden to produce "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *Scott v. City of N.Y.*, 626 F.3d 130, 133–34 (2d Cir. 2010) (citation omitted); s*ee also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020).

District courts exercise "considerable discretion" in awarding attorneys' fees. *See D.B. ex rel. S.B. v. New York City Dep't of Educ.*, 18-CV-7898 (AT) (KHP), 2019 WL 6831506, at *1 (S.D.N.Y. Apr. 22, 2019) (internal quotation marks and citation omitted), *adopted by* 2019 WL 4565128 (S.D.N.Y. Sept. 20, 2019); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *McDaniel v. County. of Schenectady*, 595 F.3d 411 (2d Cir. 2010); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008).  However, when awarding attorneys' fees, the court must also "clearly and concisely state reasons supporting the award."  *Tackie v. Keff Enters. LLC*, No. 14–CV–2074 (JPO), 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014) (first citing *Hensley*, 461 U.S. at 437; then citing *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014)) (awarding attorneys' fees under FLSA and NYLL).

### a. Reasonable Hourly Rate

Five attorneys and four paralegals at Pelton Graham LLC worked on this case.  Pelton

Graham is a highly experienced litigation firm for wage and hour cases.  (Pelton Aff. 43-53.)

Brent E.  Pelton is the founder of Pelton Graham LLC, has approximately 16 years of experience,

and charges an hourly rate of $450 per hour.  (ECF No. 202 at p. 32.)  This rate is at the upper

limit of what courts in this District have deemed reasonable for experienced litigators in wage-

and-hour cases, however courts have approved similar rates for Pelton Graham in other cases.

*Hall v. ProSource Techs., LLC*, No. 14-cv-2502, 2016 U.S. Dist. LEXIS 53791, at *37

(E.D.N.Y. Apr. 11, 2016) (approving Pelton Graham's similar 2016 rates); *Guinea v. Garrido*, No.

19-cv-5860 (E.D.N.Y. Jan. 13, 2020) (*see also* Order of the Court dated Oct. 11, 2020) (Pelton

Graham's rates are "reasonable and consistent with rates allowed in [the Eastern] district").

Partner Taylor B. Graham also assisted with the case and has extensive experience since

he has been with the firm since May of 2009.  Mr. Graham charges an hourly rate of $350 per

hour.  (ECF No. 202 at p. 32.)  Mr. Graham's hourly rate is on the lower end of the spectrum,

and similar rates have been found reasonable in other FLSA/NYLL actions. *See*, *e.g.*, *Guallpa v.*

*NY Pro Signs, Inc.*, No. 11- cv-3133, 2014 U.S. Dist. LEXIS 77033, at *27-*29 (S.D.N.Y. May 27,

2014) (awarding $300-$600 per hour for experienced FLSA attorneys); *Viafara v. MCIZ Corp.*,

No. 12-cv-7452, 2014 U.S. Dist. LEXIS 60695, at *39-*41 (S.D.N.Y. Apr. 30, 2014) (finding

reasonable hourly rates of $550 for partner).

Three associates from Pelton Graham also worked on this case: Alison Magiatordi

Lobban, Joanne Albertsen and Kristen Boysen. (ECF No. 202 at p. 32.)  Ms. Lobban and Ms.

Albertsen have been with the firm for 7 years and charge an hourly rate of $300.  Ms. Boysen

has worked for the firm for 6 years and charges an hourly rate of $250. *Id.*  Their hourly rates

are towards the lower end of the range that courts in this District have deemed reasonable for

associates with similar experience in wage-and-hour cases. *See Reyes v. Lincoln Deli Grocery*

*Corp.*, No. 17-CV-2732 (KBF), 2018 WL 2722455, at *8 (S.D.N.Y. June 5, 2018) (hourly rate of

$350 per hour was appropriate for attorney with five years of employment law

experience), *order clarified*, 2018 WL 3105070 (S.D.N.Y. June 25, 2018); *Liang Huo v. Go Sushi*

*Go 9th Ave.*, No. 13-CV-6573 (KBF), 2014 WL 1413532, at *8 (S.D.N.Y. April 10, 2014) (finding

$350 to be appropriate for an attorney with 10 years of experience, the majority of which was

spent on employment matters); *see also generally Surdu v. Madison Glob.*, LLC, No. 15 CIV.

6567 (HBP), 2018 WL 1474379, at *10 (S.D.N.Y. Mar. 23, 2018) ("Courts of this Circuit

commonly allow for hourly rates of $300 to $400 for experienced associates in FLSA and NYLL

wage-and-hour cases.") (collecting cases).

Additionally, four paralegals assisted with the substantial translations and work on this

case: Belinda Herazo Dau, Katherine Menjivar, Sean Johannsen, and Adriana Sandoval. (ECF No.

202 at p. 32.)  Ms. Dau practiced as a licensed attorney in Colombia for over ten years and is

bilingual in Spanish and English and charges an hourly fee of $175.  For all of the other

paralegals, their hourly rate is $125. *Id.* This hourly rate is considered to be high in this District,

nevertheless the court finds that it is reasonable because of the extensive amount of

translations and computations that had to be determined for this case.  *See Perez Garcia*, 2020

WL 1130765, at *12 (finding hourly rate of $100 for paralegal reasonable in a labor and

employment case); *Williams v. Metro-N. R.R. Co.*, No. 1:17-CV-03847 (JGK), 2018 WL 3370678,

at *8 (S.D.N.Y. June 28, 2018) (finding hourly rate of $100 reasonable), *adopted by* 2018 WL 3368713 (S.D.N.Y. July 10, 2018).

Additionally, the Plaintiffs hired John Howley from the Howley Law Firm, who has been a practicing attorney since 1990. (Howley Decl. ¶ 4.)  In 2012, Mr. Howley found his own firm where he represents plaintiffs in labor and employment actions, including class actions asserting claims under the Fair Labor Standards Act and the New York Labor law. (Howley Decl. ¶ 8.)  Mr. Howley also has argued numerous appeals in the U.S. Court of Appeals for the Second Circuit and has argued in the U.S. Supreme Court on behalf of foreign governments.  (Howley Decl. ¶ 9.)  Based on his qualifications and experience, he charges an hourly rate of $550 per hour.  While this fee is high, courts in this district have awarded hourly fees of more than $400 to attorneys with levels of experience comparable to, or higher than, Mr. Howley. *See, e.g., Ashkinazi v. Sapir,* No. 02 Civ. 2, 2005 WL 1123732, at *3 (S.D.N.Y. May 10, 2005) (awarding $425 per hour to a partner in a small firm with 26 years' experience, who specializes in employment law); *Rozell v. Ross–Holst,* 576 F.Supp.2d 527, 545–46 (S.D.N.Y. 2008) (awarding $600 per hour to a partner with over 35 years' experience in employment law, including a stint as the director of the Women's Rights Project at the A.C.L.U.)

### b.  Reasonable Hours Expended

When assessing whether the hours worked were reasonable, courts consider whether "'at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'"  *Williams*, 2018 WL 3370678, at *2 (quoting *Samms v. Abrams*, 198 F. Supp. 3d 311, 322 (S.D.N.Y. 2016)); *see also Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded . . . and in

dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal citations and quotation marks omitted); *see also Williams*, 2018 WL 3370678, at *2. Courts also consider the nature of the legal matter, reason for the fee award, whether the case involved complex issues "requiring particular attorney skills and experience [,which] may command higher attorney rates," and whether the case "require[ed] retention of a firm with the resources needed to prosecute a case effectively." *Williams*, 2018 WL 3370678, at *3 (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 185–87).

Plaintiffs have provided contemporaneous billing records which detail the hours expended and dates and descriptions of the tasks performed by both firms. (ECF No. 42.) Plaintiff seeks reimbursement for the 140.5 hours of work, which is comprised of time preparing and amending the complaint, clerical tasks and preparation for the default judgment. Given the number of Plaintiffs in this case, the detailed declarations, as well as the numerous calculations that were needed to compute their damages, the Court finds that these fees are reasonable.

Therefore, I recommend awarding attorney's fees in the amount of $92,861.67 for Pelton Graham LLC and $77,440.00 for Howley Law Firm.

**VI.** **Costs**

Both the FLSA and NYLL entitle prevailing plaintiffs in wage-and-hour actions to recover costs. 29 U.S.C. §216(b); NYLL §663(1). "An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged

fee-paying clients.'"  *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (quoting *Reichman*

*Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)); *see also Perez Garcia*,

2020 WL 1130765 at *13.

Here, Plaintiff seeks to recover $6,452.82 for Pelton Graham LLC's expenses and

$2,269.53 for the Howley Law Firm in costs, which include filing fees, process server fees and

fees for service on the New York Secretary of State, the cost of a transcript of a Court hearing,

and the cost of mailing items for this case.  These expenses are typically reimbursed under the

FLSA's and NYLL's costs provisions.  *See Xochimitl*, 2016 WL 4704917 at *22 (awarding costs for

filing and process server costs).  Plaintiffs provided an accounting of disbursements associated

with these costs, including the dates service was attempted on the Defendants. (ECF No. 204-1

at p. 6.)  Accordingly, I recommend awarding Plaintiffs costs in the amount of $6,452.82 for

Pelton Graham LLC's expenses and $2,269.53 for the Howley Law Firm.

### VII.    Post-Judgement Interest

Plaintiffs have not provided any request or argument for pre-judgment interest or post-

judgment interest in their default judgment motion. ECF No. 203.  Nevertheless, "the very

language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in

any civil case where money damages are recovered." *Duffy v. Oyster Bay Indus., Inc.,* No. 10 Civ.

3205(ADS)(ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011), *report & recommendation*

*adopted,* No. 10 Civ. 3205(ADS)(ETB), 2011 WL 2259749 (E.D.N.Y. June 2, 2011); *see generally*

*Begum v. Ariba Disc., Inc.,* No. 12 Civ. 6620(DLC), 2015 WL 223780, at *8 (S.D.N.Y. Jan. 16, 2015)

(awarding post-judgment interest in a FLSA and NYLL wage-and-hour case).  Thus, in *Tacuri v.*

*Nithun Constr. Co.,* No. 14 Civ. 2908(CBA)(RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24,

2015), the court awarded the plaintiffs post-judgment interest, despite their failure to request post-judgment interest, on all sums awarded concerning their FLSA and NYLL wage-and-hours claims.  Therefore, I respectfully recommend that the Plaintiffs also be awarded post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961. *See id.*

## CONCLUSION

For the reasons set forth above, I recommend that each individual Plaintiff be awarded the amounts comprised of unpaid minimum wages, overtime wages, spread of hours wages, liquidated damages, incurred fees for bounced paychecks, and statutory damages as delineated in the attached chart.  I also recommend awarding Plaintiffs attorneys' fees in the amount of $92,861.67 for Pelton Graham LLC and $77,440.00 for Howley Law Firm, and the requested amount of costs in the amount of $6,452.82 for Pelton Graham LLC's expenses and $2,269.53 for the Howley Law Firm.  Additionally, I order the Clerk of the Court to award Plaintiffs post-judgment interest.  Plaintiffs are directed to serve a copy of this Report and Recommendation on Defendants and file proof of service of the same on the docket by no later than August 20, 2021.

Dated: August 10, 2021
      New York, New York

Respectfully submitted,

KATHARINE H. PARKER
United States Magistrate Judge

## NOTICE

Plaintiff shall have fourteen days, and Defendant shall have fourteen days, from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). A party may respond to another party's objections after being served with a copy. Fed. R. Civ. P. 72(b)(2).

Plaintiff shall have fourteen days to serve and file any response. Defendant shall have fourteen days to serve and file any response. Any objections and any responses to such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable John G. Koeltl at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and served on the other parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Koeltl. The failure to file timely objections shall result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).

| Plaintiff | Unpaid Wages | Unpaid Overtime | Spread of Hours | Liquidated Damages | Statutory Damages (Wage Notice & Statements) | Bounced Checks/ Incurred Fees | Total Recommended Award Due to Plaintiff |
|---|---|---|---|---|---|---|---|
| C. Asitimbay | $67,832.29 | $11,515.36 | $5,757.68 | $50,924.89 | $7,500 | _____ | $143,530.22 |
| M. Asitimbay | _____ | $4,457.14 | $4,847.14 | $6,782.45 | $7,500 | _____ | $23,586.73 |
| Julio E. Yunga | $51,554.11 | _____ | $5,757.68 | $34,399.38 | $7,500 | $37.00 | $99,248.17 |
| V. Yunga | $51,554.11 | _____ | $5,757.68 | $34,399.38 | $7,500 | _____ | $99,211.17 |
| D. Estrada Cortez | _____ | $5,065.71 | $1,324.00 | $5,065.71 | $10,000 | _____ | $21,455.42 |
| V. Gonzalez | $22,651.43 | _____ | $1,435.43 | $22,651.43 | $10,000 | $24.00 | $56,762.29 |
| M. Quizhpilema | _____ | $3,292.21 | _____ | $3,292.21 | $10,000 | $24.00 | $16,608.42 |
| F. Vega-Loyola | $642.86 | $8,232.14 | $4,547.14 | $8,875.00 | $10,000 | $12.00 | $32,309.14 |
| S. Calle | _____ | $22,431.76 | $2,344.52 | $15,564.97 | $10,000 | $624.00 | $50,965.25 |
| A. Campos | $99,712.75 | $23,168.52 | $10,705.25 | $75,750.13 | $10,000 | $90.00 | $219,426.65 |
| J. Campoverde | $421.43 | $19,452.62 | $800.57 | $10,938.25 | $10,000 | $120.00 | $41,732.87 |
| P. Carpintero | _____ | $12,400.26 | _____ | $10,211.15 | $10,000 | $156.00 | $32,767.41 |
| Y. De Los Santos | $62,879.64 | $14,546.25 | $7,020.89 | $70,539.45 | $10,000 | $170.00 | $165,156.23 |
| E. Gordillo | $38,005.43 | $10,904.14 | $3,900.29 | $48,909.57 | $10,000 | $258.00 | $111,977.43 |
| G. Hasangjekaj | $14,220.80 | $21,161.28 | $3,801.43 | $23,505.00 | $10,000 | $30.00 | $72,718.51 |
| S. Herrera | $69,656.71 | $16,889.79 | $7,881.93 | $75,940.94 | $10,000 | $60.00 | $180,429.37 |
| P. Katanolli | $46,817.36 | $17,615.54 | $5,765.14 | $63,318.54 | $10,000 | $240.00 | $143,756.58 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **C. Supacela** | $126,305.52 | $23,902.76 | $13,852.29 | $91,332.81 | $10,000 | $360.00 | $265,753.38 |
| **N. Zhagnay** | $40,251.61 | $72,113.77 | $19,264.39 | $84,894.94 | $10,000 | $144.00 | $226,668.71 |
| **E. Macancela** | $38,886.57 | _____ | $5,757.68 | $29,140.14 | $10,000 | $24.00 | $83,808.39 |
| **B. Macancela** | $74,639.61 | $18,530.88 | $7,941.80 | $57,836.87 | $10,000 | _____ | $168,949.16 |